Filed 9/8/23  P. v. Flores CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN FLORES,<br><br>Defendant and Appellant. | F084953<br><br>(Super. Ct. No. BF163237A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Chad A. Louie, Judge.

Gabriel Bassan, under appointment by the Court of Appeal, Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Craig S. Meyers, Deputy Attorneys General, for Plaintiffs and Respondents.

-ooOoo-

## INTRODUCTION

In 2016, appellant John Flores pled no contest to first degree residential burglary (Pen. Code,[1] § 460, subd. (a)) with an allegation that a nonaccomplice was present during the offense (§ 667.5, subd. (c)(21)). Flores also admitted two prior strikes within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and enhancement allegations for two prior serious felony convictions (§ 667, former subd. (a)) and two prison priors (§ 667.5, former subd. (b)). In view of his plea, the trial court struck one of the prior strikes, and sentenced Flores to the agreed-upon term of 20 years in state prison.

In 2022, the California Department of Corrections (CDC) sent the trial court a letter requesting that Flores's prison sentence be recalled and that he be resentenced following the enactment of new legislation which vested the trial court with discretion to strike a prior serious felony enhancement. (See §§ 1170, subd. (d)(1),[2] 667, subd., (a)(1), 1385.) The trial court recalled Flores's sentence, struck the one-year prior prison term enhancements applied to Flores's sentence as they could no longer legally apply, but declined to strike the five-year prior serious felony enhancements. Flores was resentenced to an aggregate term of 18 years in state prison.

On appeal, Flores contends the trial court abused its discretion by declining to strike one of the five-year prior serious felony enhancements applied to his sentence. According to Flores, newly added subdivision (c)(2)(B) of section 1385 prohibits the application of multiple enhancements in a single case. In the alternative, Flores contends

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2] "Effective June 30, 2022, '[t]he Legislature ... renumbered section 1170.03 to section 1172.1, but made no substantive changes.' " (*People v. Braggs* (2022) 85 Cal.App.5th 809, 818; Stats. 2022, ch. 58, § 9, eff. June 30, 2022.) Throughout this opinion, we refer to the statute by its original code designation for the sake of clarity and consistency.

that the trial court abused its discretion by declining to strike one of the enhancements. We affirm.

## PROCEDURAL HISTORY

On April 19, 2016, the Kern County District Attorney charged Flores with first degree residential burglary with an enhancement for a nonaccomplice being present (§§ 460, subd. (a), 667.5, subd. (c)(21), count 1); the unlawful receipt of stolen property (§ 496(a), count 2); obstructing a peace officer (§ 148, subd. (a)(1), count 3); and the unlawful possession of burglary tools (§ 466, count 4). The information further alleged that Flores had suffered seven prior strike convictions, seven prior serious felony convictions, and that he had served six prior prison terms.[3]

On October 6, 2016, Flores plead no contest to one count of first-degree residential burglary (§ 460, subd. (a)), and he admitted having suffered two prior strike convictions, and enhancement allegations for two prior prison terms (§ 667.5, subd. (b)) and two prior serious felony convictions (§ 667, subd. (a)). In view of his plea, the trial court struck one of the prior strikes. All remaining counts and allegations were dismissed.

Flores was sentenced to the negotiated term of 20 years in state prison. His sentence was comprised of a four-year term for burglary, doubled to eight years for his prior strike; 10 years for the two prior serious felony enhancements, and two years for the prior prison term enhancements.

On January 1, 2022, Assembly Bill No. 1540 (2021-2022 Reg. Sess.) went into effect. The statute established a presumption in favor of granting a request to recall and resentence a defendant. (See *People v. Braggs*, *supra*, 85 Cal.App.5th at p. 820.)

---

[3] The information also charged Flores's codefendant, Crystal Hernandez, in count 1 and 2, as well as with the crime of possession of paraphernalia used to inject or consume a controlled substance (Health & Saf. Code, § 11364). Hernandez is not a party to this appeal.

On March 3, 2022, the CDC sent a letter to the trial court, requesting that Flores's prison sentence be recalled and he be resentenced pursuant to section 1170, subdivision (d)(1).

On September 14, 2022, the trial court resentenced Flores to a term of 18 years in state prison.

Flores filed a timely notice of appeal.

<strong><u>STATEMENT OF FACTS</u></strong>

**The CDC's Recommendation for Recall of Sentence and Resentencing**

Former section 1170.03 establishes a procedure by which a trial court may "at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison ... recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." The CDC's recommendation vests the court with jurisdiction to recall and resentence a defendant, even when the judgment of conviction has become final, and even where a defendant's sentence was part of a negotiated plea agreement. (See former § 1170.03, subd. (a)(1), (3).) It is " 'an invitation to the court to exercise its equitable jurisdiction.' " (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.)

When the CDC invites the court to recall and resentence a defendant, it establishes a presumption in favor of doing so. This presumption " 'may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety,' " as defined in subdivision (c) of section 1170.18. (*People v. McMurray, supra*, 76 Cal.App.5th at p. 1040.) If the CDC "recommends recall and resentencing, the court is … required to hold a hearing (unless the parties otherwise stipulate), state on the record its reasons for its decision, provide notice to the defendant, and appoint counsel for the defendant." (*People v. McMurray*, at p. 1040.)

On January 3, 2022, the Secretary of the CDC sent the trial court a letter recommending that Flores's sentence be recalled and that he be resentenced. The CDC observed that trial courts were vested with newly-conferred discretion to strike prior serious felony convictions or the punishment for this enhancement (§ 667, subd. (a)(1)) under section 1385. This authority did not exist at the time of Flores's plea agreement and sentencing hearing. The CDC letter included a "Cumulative Case Summary and Evaluation Report" (§ 1170.03, subd. (a)(1)), among other documents describing Flores's commitment offense, his criminal history, and his performance on parole and post-release community supervision.

The following facts are derived from the CDC's evaluation report:

*The Commitment Offense*

> "On February 20, 2016, officers were dispatched to an apartment regarding a burglary in progress. The victim stated she was in her bedroom located on the second floor of the residence when she heard banging noises and a woman's voice coming from the first floor. Upon arrival, an officer contacted the victim through her second floor window. The victim reported that she could still hear voices coming from the first floor of the apartment. Officers responded to the back door of the apartment where they observed John Flores and Crystal Hernandez exit the rear door. Flores and Hernandez were taken into custody without incident. During an investigation, officers located a camouflage backpack containing an X-Box 360, and a pair of high-heeled shoes near the rear door."

*Prior Convictions*

- February 16, 1986, use/under the influence of controlled substance (Health & Saf. Code, § 11550, subd. (a)).

- December 5, 1986, use/under influence of controlled substance (Health & Saf. Code, § 11550, subd. (a)).

- June 8, 1987, three counts of first degree burglary (§ 459).

- January 23, 1991, two counts of first degree burglary (§ 459). Flores was sentenced to 11 years in state prison.

- November 26, 1998, battery by prisoner (§ 4501.5). Flores was sentenced to a term of five years in state prison.

- August 22, 2007, knowingly receiving stolen property (§ 496, subd. (a)). Flores was sentenced to a prison term of six years.

- March 16, 2014, obstruct/resist executive officer (§ 69). Flores was sentenced to 16 months in state prison.

- November 14, 2014, post-release community supervision violation (§ 3455).

- In 2016, Flores was convicted of first degree residential burglary (§ 459) and sentenced to a term of 20 years in state prison.

### *Parole History*

- November 14, 1990, Flores was released from the custody of the CDC to parole supervision.

- July 25, 1991, Flores was returned to CDC custody with a new term.

- October 25, 2006, Flores was released from CDC custody to parole supervision.

- August 27, 2007, Flores was returned to CDC custody due to parole revocation.

- February 18, 2008, Flores completed the revocation period and was returned to parole supervision.

- May 20, 2008, Flores was returned to CDC custody with a new term.

- August 28, 2013, Flores was discharged from CDC custody to Post-Release Community Supervision.

- November 18, 2016, Flores was returned to CDC custody with a new term.

### Post-Conviction Circumstances

At the time of the resentencing hearing, Flores was 54 years old.

On July 13, 2022, two months prior to his resentencing hearing, Flores underwent back surgery for Thoracolumbar Kyphosis, a spinal condition. According to trial counsel's sentencing brief, he also underwent surgery for a hernia in early 2022.

Flores suffers from degenerative disks with nerve damage. At the time of his resentencing hearing, Flores had limited mobility, suffered from "intractable pain," and required a walker or wheelchair. The record does not indicate whether his pain and mobility are expected to improve following his surgery, or whether he will need to use a walker or wheelchair permanently. While Flores is on "limited duty" at the prison where he is housed, the CDC's medical report states that he is "Low Medical Risk" and requires only "Basic Nursing."

Flores has not participated in self-help programs while in prison. Trial counsel's sentencing brief suggests this may have been due to Flores's initial housing classification, Covid-related restrictions, and program waitlists.

Over the past five years that he has been in prison, Flores has accrued three CDC section 115 rules violations arising from separate incidents, all of which are for nonviolent offenses. In January 2020, he was found guilty of the fermentation or distillation of materials in a manner consistent with producing inmate manufactured alcohol. In March 2018, he was found guilty of the unauthorized possession of drug paraphernalia. And, in October 2017, he was found in possession of a cellular phone.

**The Resentencing Hearing**

Following argument by the parties, the trial court declined to strike either of the five-year prior serious felony enhancements. The court gave the following statement of reasons explaining its ruling:

> "THE COURT: Well, given the defendant's previous criminal history as well as the facts and circumstances in this case and considering the defendant's age as well as his medical condition, his record on parole as well as his record while in custody with the California Department of Corrections, I am going to be striking the 667.5(b)(1) 1-year prison priors. The law requires that. So that would be 2 years off his sentence. But I do believe because this current case and his record of residential burglaries having not been free from prison custody for any meaningful length of time, and that this last residential burglary included an individual being home while the defendant burglarized the home. The home owner [*sic*] was home … on the second floor when the police

7.

arrived.  I do believe the dismissal of any other enhancement would result in either the physical harm or other serious danger to others.  That serious danger to others would be other crimes such as residential burglary in this case where the home owner [*sic*] was home.  Making that finding, I'm going to decline to strike or dismiss any other enhancements as requested.  The defendant will be resentenced to the 18 years with the 1-year prisons being stricken.  [T]he abstract of judgment will be updated to reflect that."

## DISCUSSION

### I.  Amended Section 1385 Did Not Require the Trial Court to Dismiss One of the Prior Serious Felony Enhancements

In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (Senate Bill 81), amending section 1385 to set forth factors that the trial court must consider when determining whether to exercise its discretion to strike enhancements from a defendant's sentence in the interest of justice.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)  Flores contends that one of the five-year prior serious felony enhancements applied to his sentence must be stricken following the enactment of Senate Bill 81.  He submits that under newly added subdivision (c)(2)(B) of section 1385, dismissal of one of the two prior serious felony enhancements applied to his sentence was compulsory.  (See § 1385, subd. (c)(2)(B) [where multiple enhancements are alleged in a single case, "all enhancements beyond a single enhancement *shall* be dismissed"], italics added.)

California courts have unanimously rejected this same argument in interpreting the " 'shall be dismissed' " language of subdivision (c)(2)(B) and (c)(2)(C) of amended section 1385.  (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 294-297 [rejecting appellant's assertion that under subdivision (c)(2)(B), dismissal is required where an enhancement would result in a prison sentence of over 20 years]; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239, review granted Apr. 19, 2023, S278786 [same]; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396-398, review granted Mar. 22, 2023, S278309 [explaining that if the

court were to interpret subdivision (c)(2)(B) and (C) as mandatory, then the existence of the mitigating factors therein "would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively*"].)[4]

Consistent with our colleagues' decisions, we reject Flores's assertion that the trial court was required to dismiss one of the five-year prior serious felony enhancements under subdivision (c)(2)(B) of section 1385. The dismissal of an enhancement, the application of which could result in a prison sentence of over 20 years (§ 1385, subd. (c)(2)(C)), or where "Multiple enhancements are alleged in a single case" (*id.*, subd. (c)(2)(B)), is not required if "dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).)

## A.    Senate Bill 81 and Amended Section 1385

On January 1, 2022, Senate Bill 81 went into effect, amending section 1385 to add subdivision (c). (Stats. 2021, ch. 721.) Subdivision (c) provides the following, in relevant part:

> "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.
>
> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the

---

[4] Our Supreme Court granted review in *Walker* to address the following issue: "Does the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*People v. Walker*, *supra*, 86 Cal.App.5th 386, review granted on limited issue of preceding question on Mar. 22, 2023). Here, the trial court determined that dismissal of the challenged enhancement would endanger public safety. Consequently, *Walker* does not affect our analysis.

court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

[¶...¶]

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

[¶...¶]

"(4) The circumstances listed in paragraph (2) are not exclusive and the court maintains authority to dismiss or strike an enhancement in accordance with subdivision (a)."

## B.    Analysis

" ' "Our fundamental task in construing" ... any legislative enactment, "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." [Citation.] We begin as always with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." ' " (*People v. Adams* (2018) 28 Cal.App.5th 170, 181, citing *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838.)

Beginning with the plain language of subdivision (c)(1) of section 1385, the statute provides that the trial court "shall" dismiss an enhancement "if it is in the furtherance of justice to do so." The following subdivision, (c)(2), refers to nine mitigating circumstances for the trial court to consider in making this determination. (See § 1385, subd. (c)(2)(A)-(I).) Subdivision (c)(2) specifies that proof of any of the enumerated mitigating circumstances "weighs greatly in favor of dismissing the enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2), italics added.) Thus, dismissal is plainly conditioned upon a finding that it would not endanger the public safety.

Section 1385, subdivision (c)(2)(B) and (C) both explicitly command that an enhancement "shall be dismissed" where "[m]ultiple enhancements are alleged in a single case," (*id*., subd. (c)(2)(B)) or if "[t]he application of an enhancement could result in a sentence of over 20 years" (*id*., subd. (c)(2)(C)). However, the presence of these circumstances does not override the public safety exception.

Dismissal of an enhancement is only appropriate if the court finds "it is in the furtherance of justice." (§ 1385, subd. (c)(1).) Clearly, it would not further the interests of justice to dismiss an enhancement if dismissal would endanger the public safety. (§ 1385, subd. (c)(1) & (2).) Under such circumstances, "dismissal would not be authorized, let alone required." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 297, fn. 6.) Thus, notwithstanding the mandatory dismissal language in subdivision (c)(2)(B) and (C) of section 1385, dismissal of an enhancement is not required if it would endanger the public safety.

When the language of a statute is clear and unambiguous, the court need not turn to extrinsic sources to discern the Legislature's intent. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919.) Nonetheless, our interpretation is consistent with the legislative materials preceding the enactment of Senate Bill 81.

11.

A prior version of Senate Bill 81, amended in the Senate on February 8, 2021, stated that "the court shall dismiss an enhancement upon finding any of the following circumstances to be true," including where "[m]ultiple enhancements are alleged in a single case or the total sentence is over 20 years." (Sen. Bill 81.) However, even this version of the statute preserved a judge's discretion to impose an enhancement where public safety concerns prevail. The language of the proposed statute provided: "[t]he court may decline to dismiss a charged sentencing enhancement … upon a showing by clear and convincing evidence that dismissal of an enhancement would endanger public safety." (*Ibid*.)

A report from the Senate Committee on Public Safety is replete with references to the fact that Senate Bill 81 was intended to provide the trial court with guidance with factors it should consider in determining whether an enhancement should be stricken or imposed. (Sen. Com. on Public Safety, Analysis of Sen. Bill 81 (2021-2022 Reg. Sess.), March 15, 2021, at pp. 1-3, 5.) This report also states that Senate Bill 81 was based, in part, on reforms recommended by the Committee on the Revision of the Penal Code (Committee). The report states that the Committee recommended that "judges should retain authority to impose sentence enhancements in appropriate cases. The Committee's recommendation leaves to judges the authority to impose sentence enhancements to protect public safety." (*Id*. at p. 4.)

Subsequently, an amendment was made to Senate Bill 81 in the Assembly on August 30, 2021 to "[r]emove the presumption that it is in the interests of justice to dismiss an enhancement when specified circumstances are found to be true and instead provides that the court shall, in exercising its discretion to dismiss an enhancement in the interests of justice, consider and afford great weight to evidence of those specified circumstances." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business on Sen. Bill No. 81 (2021-2022 Reg. Sess.), as amended Aug. 30, 2021, p. 2.) This version of Senate Bill 81 is the version that is currently in effect.

In a September 8, 2021 Office of Senate Floor Analyses, the author of Senate Bill 81, Senator Nancy Skinner, clarified that Senate Bill 81 was intended to preserve a judge's authority to impose an enhancement where doing so would protect the public safety. Senator Skinner explained, "SB 81 codifies a recommendation developed with the input of the judges who serve on the Committee on the Revision of the Penal Code for the purpose of improving fairness in sentencing while retaining a judge's authority to apply an enhancement to protect public safety." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business on Sen. Bill No. 81 (2021-2022 Reg. Sess.), prepared Sept. 8, 2021, p. 5.)

Senator Skinner also submitted a letter for placement in the Senate Daily Journal clarifying her intent in drafting Senate Bill 81. The letter, dated September 10, 2021, states that the August 30, 2021 amendment removed the presumption that the court must dismiss an enhancement if certain mitigating circumstances are present, and instead requires the court to place great weight on the presence of mitigating circumstances. Senator Skinner explained, "The retention of the word 'shall' in Penal Code § 1385(c)(3)(B) and (C) should not be read as a retention of the previous presumption language – *the judge's discretion is preserved in Penal Code § 1385(c)(2)*."[5] (Sen. Skinner, author of Sen. Bill No. 81 (2021-2022 Reg. Sess.), letter to Secretary of the Senate, Sept. 10, 2021.)

We acknowledge that "the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.) This is particularly true here because Senator Skinner's letter is dated the day after Senate Bill 81 had been

---

[5] Section 1385, subdivision (c)(3)(B) and (C) were subsequently renumbered and now appear as subdivision (c)(2)(B) and (C).

passed in the Senate. However, because Senator Skinner's intent is reflected in the clear and unambiguous language of the statute, it is logical to presume that the Legislature shared her intent in passing Senate Bill 81.

Focusing on the "shall be dismissed" language within subdivision (c)(2)(B) and (C) of section 1385, Flores insists that dismissal under the circumstances set forth within these subdivisions is compulsory, regardless of public safety concerns. However, we do not read statutory language in isolation. (See *People v. Cole* (2006) 38 Cal.4th 964, 975 ["we look to the entire substance of the statutes in order to determine their scope and purposes"], accord, *People v. Rizo* (2000) 22 Cal.4th 681, 685; *People v. Peyton* (2022) 81 Cal.App.5th 784, 800.) Considering subdivision (c)(2)(B) and (C) of section 1385 "in the context of [its] statutory frame work as a whole" (*People v. Cole, supra,* 38 Cal.4th at p. 975), amended section 1385 makes clear that where these mitigating circumstances are present, the court "shall" dismiss an enhancement *unless* dismissal would endanger the public safety.

Flores further contends the mandatory language of dismissal within subdivision (c)(2)(B) and (C) of section 1385 must be given effect to avoid surplusage. We find his argument unpersuasive for two reasons.

First, contrary to Flores's assertion, it is possible to give effect to all provisions within amended section 1385, without rendering the "shall be dismissed" language in subdivision (c)(2)(B) and (C) surplusage. As our colleagues in the Fourth District, Division 2, Court of Appeal explained in *People v. Mendoza*, "if the court does not find that dismissal of the enhancement would endanger public safety, then the court must dismiss any enhancement that 'could result in a sentence of over 20 years' (§ 1385(c)(2)(C)) or 'all enhancements beyond a single enhancement' when multiple enhancements are proven (§ 1385(c)(2)(B))." The seven other mitigating circumstances (see § 1385, subd. (c)(2)(A), (D)-(I)), if proven, "weigh 'greatly in favor of dismissing the enhancement' (§ 1385(c)(2)), but the court is not required to dismiss the enhancement

14.

if the court otherwise concludes that dismissal is not 'in the furtherance of justice' (§ 1385(c)(1))." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 297, fn. 6.)  In our view, this is a reasonable interpretation of the statute that would avoid surplusage.

Second, even assuming our interpretation of amended section 1385 rendered the "shall be dismissed" language in subdivision (c)(2)(B) and (C) surplusage, the rule against surplusage is merely an interpretive aide.  It " ' "is not an inexorable command to override common sense and evident statutory purpose." ' " (*People v. Anderson* (1987) 43 Cal.3d 1104, 1145-1146.)  Generally speaking, the "[c]anons of statutory construction may assist courts in ascertaining legislative intent. [Citation.]  'But it is well established that "canons of statutory construction are merely aids to ascertaining probable legislative intent" ' and are not to be ' "applied so as to defeat the underlying legislative intent otherwise determined." ' " (*People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 862.)

" ' " 'No single canon of statutory construction is an infallible guide to correct interpretation in all circumstances.' " ' " (*People v. Superior Court (Ortiz), supra,* 81 Cal.App.5th at p. 862.)  Thus, "[a]lthough 'a construction that renders part of a statute to be surplusage should be avoided [citation], this rule is not absolute and "the rule against surplusage will be applied only if it results in a *reasonable* reading of the legislation" [citation].' " (*MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 650, citing *Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc*. (2002) 99 Cal.App.4th 247, 254, fn. 5.)

Flores's interpretation of the "shall be dismissed" language in section 1385, subdivision (c)(2)(B) and (C) is not a reasonable reading of the statute.  Under Flores's interpretation, any enhancement resulting in a possible total sentence of over 20 years or under circumstances where multiple circumstances were alleged in a single case, would be struck down regardless of public safety concerns.  The implications of this would be

15.

profound. If this is what the Legislature truly had intended, we think it would have stated its intention without ambiguity.

## II. Flores Has Failed to Demonstrate that the Trial Court Abused its Discretion by Declining to Strike One of the Five-Year Prior Serious Felony Enhancements

Flores further contends that the trial court abused its discretion by declining to dismiss one of the five-year prior serious felony enhancements applied to his sentence. We conclude that Flores has failed to demonstrate the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### A. Standard of Review

" '[A] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion." (*People v. Carmony, supra,* 33 Cal.4th at p. 373.) A trial court's decision to not strike an allegation will be upheld unless the decision is irrational or arbitrary. (*Id.* at pp. 376-377.) The party attacking the trial court's sentencing decision bears the burden of showing an abuse of discretion. (*Id.* at pp. 376-377; *People v. Philpot* (2004) 122 Cal.App.4th 893, 904.)

Flores submits that this court should review the trial court's decision de novo, because it presents a mixed question of law and fact. However, the authority he directs this court to does not sufficiently support his assertion. (See, *People v. Cromer* (2001) 24 Cal.4th 889, 901[establishing an independent standard of review to determine whether a prosecutor's unsuccessful efforts to locate an absent witness constitute a sufficient exception to the confrontation clause].) We decline to depart from the well-settled standard of review set forth in *People v. Carmony*.

### B. Analysis

Section 1385, subdivision (c)(2), specifies that "[p]roof of the presence of one or more of [the specified circumstances of mitigation] weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would

16.

endanger public safety." As we read the statute, if striking an enhancement would endanger public safety, the trial court is not required to ascribe the relevant mitigating factor or factors "great weight." (§ 1385, subd. (c)(2).) Instead, the trial court is free to ascribe any weight it deems appropriate to the relevant factor or factors.

Here, there were two mitigating factors present. First, there was more than one enhancement applied to Flores's sentence (see, § 1385, subd. (c)(2)(B)). Second, the five-year prior serious felony enhancements applied to Flores's sentence are based upon convictions that are more than five years old (see, § 1385, subd. (c)(2)(H)).

Subdivision (c)(2) of section 1385 defines "endanger public safety" as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The record supports the trial court's conclusion that dismissal of the five-year prior serious felony enhancement would "endanger the public safety," as this term is defined in section 1385.[6]

Despite his physical condition, Flores has not been free from prison for any significant period of time before reoffending. His criminal history spans 30 years and includes convictions for five residential burglaries; including the current offense, where

---

[6] In *People v. Braggs, supra*, 85 Cal.App.5th 809, the appellant claimed that the trial court abused its discretion by failing to strike a section 667, subdivision (a)(1) sentencing enhancement applied to his sentence following a request for recall and resentencing by the Secretary of the CDC. Braggs argued that the record failed to support the conclusion that he posed an "unreasonable risk of danger to public safety," as the term is used under section 1170.03. (See, § 1170.18, subd. (c) ["unreasonable risk of danger to public safety" means there is an unreasonable risk that the defendant will commit a new super strike offense (see § 667, subd. (e)(2)(C)(iv)].) In the absence of such evidence, he asserted that a statutory presumption in favor of recall and resentencing applied, and the trial court erred by failing to resentence him in accordance with the sentencing recommendation of the Secretary of the CDC. The *Braggs* court rejected the defendant's argument, finding that the appropriate term of the new sentence was ultimately committed to the discretion of the trial court.

Although *People v. Braggs* was filed before Flores submitted his opening brief in the instant appeal, Flores does not raise a similar argument here. Consequently, we do not address *People v. Braggs* and its potential application to this case.

the homeowner was present; and four violations of the terms of his parole and post-release community supervision. Although Flores's commitment offense did not involve the use of violence, his conviction is designated a violent felony by statute. (See § 667.5, subd. (c)(21).) The offense carries with it the potential for violence. (*People v. Munguia* (2016) 7 Cal.App.5th 103, 110, citing *Doe v. Saenz* (2006) 140 Cal.App.4th 960, 988 ["[o]ccupied burglary plainly presents a potential for violence and consequently merits enhanced punishment"].)

Flores has not participated in any self-help programs in prison, nor does the record show that he has expressed regret for his crimes. (See generally, *In re Lawrence* (2008) 44 Cal.4th 1181, 1226 [the petitioner's repeated expression of remorse for the murder of her lover's wife, and numerous psychological and Board determinations that she would not represent a danger to the public safety if released from prison, supported the Board of Parole Hearing's determination that she should have been granted parole].) Additionally, there is no information available in the record detailing Flores's post-release plans, such as his intended place of residence, the presence of a support system from friends or family, or the existence of any employment prospects.

Flores is currently 55 years old and will be parole eligible in less than six years. His current physical condition and his age support the conclusion that he is less likely to recidivate. However, for the reasons discussed above, his release still presents a risk of "serious danger to others" (see § 1385, subd. (c)(2)). Although reasonable minds could disagree as to whether one of Flores's prior serious felony convictions should have been stricken in light of the mitigating factors present here, "[i]t is not enough that reasonable people disagree about whether to strike [an enhancement]." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140.) We find no abuse of discretion upon this record.

Flores attempts to resist this conclusion by challenging the trial court's decision on several grounds. First, he claims that the trial court gave no weight to the fact that he is now physically challenged and over 50 years old, an age at which recidivism rates tend to decline. However, the record shows that the trial court did consider these factors. Trial counsel attached medical documents to her resentencing brief which described Flores's

medical condition and she discussed Flores's physical condition at the resentencing hearing. She observed that Flores had back surgery and that at the time of the hearing, he was in a wheelchair.

The trial court explicitly acknowledged that Flores's age and physical condition would reduce his risk to the community, remarking: "I do appreciate the fact that there is research indicating that as people become older they tend to be less of a risk of committing crimes in the community as they reach 40, and then as they reach 50. I'm considering that the defendant is now around 54 years old and does have some medical conditions, or has had some surgeries on his back I believe. [¶] "…That would limit his ability to be a risk to the community." The trial court nonetheless concluded that dismissal of one or both of the five-year enhancements would "result in either the physical harm or serious danger to others." Thus, contrary to Flores's assertion, the court did consider these factors.

Second, Flores contends the trial court failed to consider his age and *future* circumstances at the time of his potential release on parole, focusing only on his immediate risk of danger to the community.[7] (See, e.g., *People v. Williams* (2018) 19 Cal.App.5th 1057, 1063 ["A defendant who would obtain immediate release … poses a different potential danger to society than a defendant who could be released only in his or her 70's"].) The record does not affirmatively demonstrate that the trial court failed to consider Flores's risk of danger to the community at the time of his potential release on parole, if one or both of his enhancements were stricken. In the absence of evidence to the contrary, we presume that the trial court considered this factor. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [" '[t]he trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations] and 'is presumed to

---

 **7** The CDC's inmate locator website data states that Flores will be parole eligible in March 2029. (https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=BB5292 [last accessed Sept. 6, 2023].) Thus, he would have been parole eligible in 2024 if one of his five year-prior prison term enhancements had been stricken.

have considered all of the relevant factors in the absence of an affirmative record to the contrary' "].)

Finally, Flores asserts that the trial court relied almost exclusively upon his commitment offense in declining to strike the five-year prior serious felony enhancement. Once again, the record refutes Flores's conclusion. The trial court considered factors in favor of striking the five-year enhancement, including Flores's current age and his physical condition, but ultimately concluded that his commitment offense, in addition to the fact that Flores has not been free from custody for any significant period of time, support the conclusion that striking one of the enhancements would endanger the public safety.

## III.    No Ineffective Assistance of Counsel

Flores further asserts that his trial counsel was constitutionally ineffective for (1) failing to argue that dismissal of one of the five-year enhancements was mandatory; and (2) for incorrectly advising the trial court that Flores had suffered a prior conviction for aggravated assault. In part I, *ante*, we rejected Flores's assertion that dismissal of one or more enhancements is required whenever "[m]ultiple enhancements are alleged in a single case." (§ 1385, subd. (c)(2)(B).) Flores cannot establish ineffective assistance of counsel on this basis.

With respect to Flores's second contention, the record does support Flores's claim of error. Trial counsel misadvised the trial court by representing that Flores had suffered a prior conviction for aggravated assault. However, the record does not support Flores's claim that he was prejudiced by trial counsel's error.

### A.    Background

In 1998, Flores was convicted of battery by a prisoner on a nonconfined person (§ 4501.5), a felony. When the trial court inquired as to the nature of this offense at the resentencing hearing, the prosecutor stated that the offense was for "assault by a prisoner with a deadly weapon." Trial counsel interjected, "[F]orce likely to cause great bodily

20.

injury." The trial court clarified that the conviction was therefore either "assault while in prison with a deadly weapon or with force likely to cause great bodily injury." Both the prosecutor and trial counsel agreed. However, neither of these are elements of the crime of battery by a prisoner within the meaning of section 4501.5.

Section 4501.5, which has remained unchanged since Flores's conviction in 1998, provides the following: "Every person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony and shall be imprisoned in the state prison." Thus, the parties mistakenly assumed Flores's prior conviction for battery was an aggravated assault.

At the resentencing hearing, trial counsel subsequently represented that none of Flores's convictions had resulted in significant injury. The prosecutor did not object or offer statements contradicting trial counsel's claim.

## B.  Relevant Legal Principles

To prevail on a claim of ineffective assistance of counsel, Flores must make a two-part showing. First, he must establish that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) Second, he must show that trial counsel's deficient performance was prejudicial. (*Ibid.*) Prejudice must be affirmatively shown; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

It is settled that if the record reveals that an appellant has not suffered prejudice, we may resolve a claim of ineffective assistance of counsel on that basis alone. (*Strickland v. Washington, supra*, 466 U.S. at p. 697.)

## C.      Analysis

Although the record supports Flores's claim that trial counsel misadvised the court as to the nature of Flores's prior conviction, it is not reasonably probable that but for trial counsel's error, the result of the proceeding would have been different.  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)  At no point did the trial court suggest that this conviction factored into its decision declining to exercise its discretion to strike one or both of the five-year enhancements.  As the Attorney General correctly observes, the trial court's decision was based upon the fact that Flores has not been free from custody for any significant period of time and that he posed a significant risk of engaging in future residential burglaries.  The court said nothing of Flores's risk of committing a future aggravated assault.  As Flores cannot demonstrate prejudice upon this record, we reject his claim of ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.

22.